WILLIAM A. MITCHELL *vs.* JOHN COLLINS EMMONS.

York., Opinion March 7, 1908.

*New Trials. Motions Therefor. Practice. Newly Discovered Evidence. Supreme
Judicial Court Rule XVII. "Court." Statute 1875, chapter 32 ; 1907, chapter
62, section 1. Revised Statutes, 1841, chapter 115, section 101; 1903,
chapter 79, section 46 ; chapter 84, sections 1, 22, 53 ; chapter 91,
sections 2, 5 ; chapter 101, sections 4, 6 ; chapter 104,
section 17 ; chapter 106, section 47.*

A motion under Revised Statutes, chapter 84, section 53, to set aside a ver-
dict on the ground of newly discovered evidence, in order to be properly
before the Law Court, must be made in court and the term " court " as
applied to actions at law means court in session. A Justice in vacation is
not the court.

When a motion is made under Revised Statutes, chapter 84, section 53, to
set aside a verdict on the ground of newly discovered evidence, the statute
requires that the testimony respecting the allegations of the motion " shall
be heard and reported by the Justice," meaning the Justice presiding at
the term when the motion is filed.

Rule XVII of the Supreme Judicial Court provides, among other things, that
" when a motion for a new trial is made for any other cause " than that
the verdict is against law or evidence, " the evidence in support thereof
shall be taken within such time and in such manner as the court at the
next ensuing term shall order, or the motion will be regarded as with-
drawn." No power is conferred upon a Justice in vacation to make such
order.

The rule governing a motion to have a verdict set aside on the ground of
newly discovered evidence is that before the court will grant a new trial
upon this ground, the newly discovered testimony must be of such
character, weight and value, considered in connection with the evidence
already in the case, that it seems to the court probable that on a new trial,
with the additional evidence, the result would be changed ; or it must be
made to appear to the court that injustice is likely to be done if the new
trial is refused. It is not sufficient that there may be a possibility or
chance of a different result, or that a jury might be induced to give a
different verdict ; there must be a probability that the verdict would be
different upon a new trial.

In the case at bar, which was an action to recover the purchase price of a
pair of horses sold by the defendant to the plaintiff, the trade having
been rescinded by the plaintiff because of breach of warranty by the

defendant, the verdict was for the plaintiff, and the defendant filed a motion for a new trial. *Held:* That while the evidence at the trial was contradictory, yet the jury were justified in finding a warranty on the part of the defendant and a breach of the same.

Also in the case at bar, the defendant filed a motion for a new trial on the ground of newly discovered evidence. This motion was not properly before the Law Court but for reasons stated in the opinion the Law Court concluded to consider the newly discovered evidence. *Held:* That the newly discovered evidence was merely cumulative on the question of breach of warranty and had the same or its equivalent been offered at the trial it is not probable that a different verdict would have been rendered.

On motions by defendant.  Overruled.

Assumpsit to recover $300, the purchase price paid by the plaintiff to the defendant for a pair of horses, the trade having been rescinded by the plaintiff because of a breach of warranty by the defendant.

The first and principal count in the plaintiff's declaration was as follows :

"In a plea of the case, for that, the plaintiff, at said Kennebunk, heretofore, to wit, upon the tenth day of May, A. D. 1906, paid to the defendant a certain sum of money, to wit, three hundred dollars, and received into his possession a certain pair of horses. That previous to the payment of the said money and the receipt of said horses, said defendant claimed to be the owner of said horses to have worked them upon his farm doing all sorts of work, such as hauling and backing loads, plowing, and other farm work ; and previous to said sale of said horses to the plaintiff the defendant represented and warranted to the plaintiff that said horses were sound and all right in every respect, that they would work in any spot or place, that they had done all kinds of ordinary work for the defendant, and that they were indeed and truly worth a much larger sum, to wit, four hundred dollars, than defendant required plaintiff to pay therefor. That the plaintiff, expressly relying upon the aforesaid statements and warranties concerning said horses made by the defendant, took said horses into his possession and paid the defendant therefor said sum of three hundred dollars, and then and there believed, on account of the said statements and warranties of the defendant that said horses were well worth three hundred dollars, that they were

sound in every respect, would ordinarily work in any spot or place and do and perform the ordinary labor and services that work horses usually perform. The plaintiff says that the statements and warranties of the defendant were false and fraudulent and false mis-statements, inasmuch as one of said horses was balky and would not pull, would not work at all, although the plaintiff many times and in every way possible tried to cause said horse to work and perform ordinary services such as a work horse usually performs. And the plaintiff alleges that thereafterward, to wit, upon the twenty-ninth day of May, A. D. 1906, after negotiations and conversations with the defendant, he, said plaintiff, rescinded said sale and offered to return and deliver to the defendant at his barn in Kennebunk said horses, and at the same time demanded the return of said three hundred dollars, but that said defendant refused to accept said horses or to return to the plaintiff said sum of three hundred dollars. And the plaintiff alleges that by reason of all of the foregoing an action has accrued to him to have and recover of said defendant said sum of three hundred dollars and interest thereof from the said twenty-ninth day of May, A. D. 1906."

The declaration also contained an omnibus count of the common form together with a statement of what the plaintiff would offer to prove thereunder which in substance was the facts alleged in the first count.

Plea the general issue with brief statement as follows:

"That he the defendant never represented and warranted to the plaintiff that said horses were sound and all right in every respect or that they would work in any spot or place.

"And the defendant further says that when said plaintiff received said horses at the home of the defendant in Kennebunk, said horses would work in any spot or place, were in good working condition, except being tired from a hard day's work, and had done all kinds of ordinary work for the defendant; and if said horses will not work now it is the result of the plaintiff's treatment of said horses or from some other cause for which the defendant is in no way to blame or responsible."

Tried at the January term, 1907, Supreme Judicial Court, York County.   Verdict for plaintiff.   The defendant then filed a general motion to have the verdict set aside.   Afterwards, to wit, October 16, 1907, the defendant also filed a motion for a new trial on the ground of newly discovered evidence, and October 19, 1907, a Justice of the Supreme Judicial Court, in vacation, issued the following order thereon:

"It is ordered that the above motion be allowed and filed and that testimony be taken not later than November 9th, A. D., 1907, before Bessie M. Harmon at the office of Judge Cleaves, Biddeford, Maine."

The case appears in the opinion.

*Cleaves, Waterhouse & Emery*, for plaintiff.

*John G. Smith*, for defendant.

SITTING:   EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

CORNISH, J.   Action to recover three hundred dollars, the purchase price of a pair of horses, the trade having been rescinded by the plaintiff because of breach of warranty by defendant.   The verdict was for the plaintiff.   The defendant filed two motions for a new trial; one on the ground that the verdict was against the evidence and the other based on newly discovered evidence.

The alleged warranty, which was oral, did not relate to the soundness of the horses, but to their willingness to work, the representation being that "they were good horses, all right, and would work anywhere."   The defendant denied both the warranty and the breach.   Was there a warranty ?   The testimony on this point is necessarily meagre.   The plaintiff affirmed it.   The defendant denied it.   The only testimony outside their respective statements is that of one Head who corroborates the plaintiff to some extent.   The jury believed the plaintiff and we think they were justified.   The plaintiff bought the horses for working purposes solely, and as there was no representation as to their soundness it is hardly probable that he would have paid the liberal sum of three hundred dollars without some satisfying representation and assurance as to their ability and

willingness to work, and without even making inquiry as to the fact as the defendant claims. The jury did not err in accepting the plaintiff's version.

As to the breach of the warranty, the evidence was more volumi- nous. Three witnesses besides the plaintiff testified to the balkiness of one horse immediately after the plaintiff brought the team home. The defendant met this with seven witnesses besides himself who testified to the work the horses had done while owned by the defendant and the absence of balkiness, and with a veterinary surgeon and three other semi-experts who testified to the cause and effects of laminitis, to which they attributed the horse's unwillingness to pull, after hav- ing had a hard day's work, an all night drive and one day's absolute rest.

This was a question peculiarly within the experience and judg- ment of the jury and we see nothing in the evidence to cause us to disturb their finding. The plaintiff apparently acted in good faith. He wrote the defendant immediately after he had worked the horses and discovered the difficulty and offered to return them, but the defendant's reply while denying all charges, was of that evasive and unsatisfactory nature that fails to inspire confidence in the author. The first motion cannot be sustained.

The second motion is not properly before us. The statutory pro- vision in relation to motions for new trial is as follows:

"When a motion is made in the supreme judicial court to have a verdict set aside as against law or evidence, a report of the whole evidence shall be signed by the presiding Justice; when the motion is founded on any alleged cause not shown by the evidence reported, the testimony respecting the allegations of the motion, shall be heard and reported by the justice, and the case shall then be marked law." Rev. St., ch. 84, sec. 53.

The motion based on newly discovered evidence falls within the latter part of this section but like that governed by the first part, it must be made in court, and the term "court" as applied to actions at law means a court in session. A Justice in vacation is not the court.

The distinction is carefully observed throughout the statutes and any powers to be exercised by a Justice in vacation are granted in express terms.   The following are illustrations.   Application for a writ of habeas corpus may be made "to the supreme judicial or superior court in the county where the restraint exists, if in session ; if not, to a justice thereof; and when issued by the court it shall be returnable thereto ; but if the court is adjourned without day, or for more than seven days, it may be returned before a Justice thereof and be heard and determined by him."   Rev. Stat. ch. 101, sec. 6.   The writ itself may be issued by the Supreme Judicial Court, or either of the Superior Courts', or any of the Justices thereof.   Rev. Stat., chap. 101, section 4.   "A petition for a writ of mandamus may be presented to a justice of the supreme judicial court in any county in term time or vacation."   Rev. Stat., chap. 104, sec. 17.   Notice on a petition for review "may be ordered by any justice of the supreme judicial court in term time or vacation."   Rev. Stat., ch. 91, sec. 2, and "on presentation of a petition for review, any justice of said court may in term time, or in vacation, stay execution on the judgment complained of, or grant a supersedeas."   Rev. Stat., chap. 91, sec. 5.

The same distinction is recognized with reference to filing in the clerk's office, documents material in a pending suit.   Rev. Stat., ch. 84, sec. 22 ; the ordering of notice upon proceedings to quiet the title to real estate ; Rev. Stat., ch. 106, sect. 47, and Laws of 1907, chap. 62, sec. 1.

The general power of ordering notices is conferred by chap. 84, sec. 1, in these words :   "When it appears that the defendant has not had sufficient notice, the court may order such further notice as it deems proper.   Any justice of the supreme judicial or of either superior court may order notice concerning any civil proceeding in or out of term time, directing how it shall be given, and such order, when made in vacation, shall be indorsed on the process."   This power of ordering notices in vacation was conferred by chapter 32 of Pub. Laws of 1875, prior to which time it vested in the court alone.

The term civil proceeding or process as here employed is "a generic term for writs of the class called judicial,"   It does not embrace mere

motions in a pending cause.   Rule XVII of this court also provides that "when a motion for a new trial is made for any other cause (than that the verdict is against law or evidence) the evidence in support thereof, shall be taken within such time as the court shall order, or the motion will be regarded as withdrawn."   No power is conferred upon a Justice in vacation to make such order.   All of these requirements, both of statute and of rule, were ignored in the present case.   The motion was not filed in court but presented to a Justice in vacation, after two terms had intervened since the trial, and the order of the Justice that the motion be allowed and filed, and the evidence taken before a designated stenographer prior to a given date, was made in vacation.

Moreover the statute requires that the testimony respecting the allegations "shall be heard and reported by the justice," meaning the Justice presiding at the term when the motion is filed.   Rev. St., ch. 84, sec. 53 ;  or as the earlier statute had it, "shall be heard, examined and reported by the judge."   Rev. St., 1841, ch. 115, sec. 101.   In harmony with this is sec. 46 of chap. 79 which specifies among the only cases that can come before the Law Court "cases in which there are motions for new trials upon evidence reported by the justice."   No certificate of the Justice accompanies the report of the evidence in this case and no order sending it forward to the Law Court.   It is signed simply by the stenographer and no testimony appears to have been heard or reported by the Justice as the law requires.   *Bartlett* v. *Lewis*, 58 Maine, 350.

For these reasons this court might with propriety decline to entertain the motion as not properly before it.   Inasmuch, however, as this point was not raised by the opposing counsel and as evidence under the motion was introduced by both parties, it may be more satisfactory to consider this evidence on its merits.

By agreement of parties, immediately after the trial held at the January term, 1907, the horses were sent to Boston to be sold at public auction.   Without the knowledge of the plaintiff, they were bid in by the defendant on February 6, 1907, for $100, and were at once shipped to the defendant's farm in West Kennebunk where they have since been kept.

The newly discovered evidence seeks to attack the verdict along two lines, first, by showing the pitiable physical condition of the horses at the time they were bought at auction by the defendant, as tending to explain the reason why they did not pull on January 13, 1907, at a test made by the plaintiff during the trial in the presence of witnesses who testified to the fact, and second, by showing that since the repurchase, they had never balked but had been faithful workers. The new evidence is bulky, covering one hundred and fifty pages while the testimony taken at the trial covers only sixty two, and it comes from nine witnesses produced by the defendant and from six produced by the plaintiff. It all relates to conditions existing and facts occurring subsequent to the trial, including a test made in the presence of both parties on November 6, 1907, one and a half years after the original sale on May 10, 1906.

While such evidence may in certain cases be regarded as newly discovered, as in *State* v. *Terrio,* 98 Maine, 17, where the evidence of certain mechanical experiments with rifle and shells was introduced by the State at the trial, without sufficient opportunity for the defense to meet it, and after conviction, upon a motion for new trial, another expert was authorized to make an exhaustive study of the question in order to test the accuracy of the conclusions reached by the expert for the State; yet the force of such evidence, which might be termed newly-occurring instead of newly-discovered, depends upon the circumstances of each particular case, the nature of the inquiry, and the kind of evidence submitted. Facts of a scientific nature might stand upon a different footing from ordinary testimony.

The new testimony here is merely cumulative on the question of breach of warranty. We fail to see why the most of it, or evidence equally forceful, could not have been produced at the trial. The test made by the defendant in November, 1907, the result of which is left in doubt, could probably have been arranged while the horses were in the plaintiff's possession at sometime between the sale in May, 1906, and the trial in January, 1907.

Nor are we greatly impressed with the weight of the new evidence. Had it or its equivalent been offered at the trial, we do not think it probable that a different verdict would have been rendered.

The rule governing such motions has been laid down in a recent case in these words : ‟The true doctrine is, that before the court will grant a new trial upon this ground, the newly-discovered testimony must be of such character, weight and value, considered in connection with the evidence already in the case, that it seems to the court probable that on a new trial, with the additional evidence, the result would be changed ; or it must be made to appear to the court that injustice is likely to be done if the new trial is refused. It is not sufficient that there may be a possibility or chance of a different result, or that a jury might be induced to give a different verdict ; there must be a probability that the verdict would be different upon a new trial." *Parsons* v. *Railway*, 96 Maine, 503.

Applying this rule to this particular case, with that discretion which is actuated "by a desire upon the one hand to put an end to litigation when the parties have fairly had their day in court, and, upon the other, to prevent the likelihood of any injustice being done," it is the opinion of the court that the entry should be,

*Motions overruled.*

*Judgment on the verdict.*